FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 SEP 24  PM 3: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

SEP 24 ▓▓▓

| | |
|---|---|
| W. W. WINKLES, CLYDE DIAL, JR., DANNY RAY, and E. V. TUCKER, residents of Alabama and (TVA residential customers and Bondholder(s)), <br><br>  Plaintiffs, <br><br> v. <br><br> TENNESSEE VALLEY AUTHORITY, a United States Corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 97-G-0546-S ) ) ) ) ) ) |

MEMORANDUM OPINION

This action was brought by four individuals who are domestic residential customers of TVA. One of the plaintiffs is also a TVA bondholder. Their complaint "seeks a declaratory judgment and an injunction to void certain illegal, unauthorized, and unconstitutional acts taken by TVA to subsidize the costs of a steel minimill joint venture, known as Trico Steel Company, L.L.C. [hereinafter "Trico Steel"], in violation of specific statutory conditions imposed on TVA's authority to sell 'surplus power' and issue bonds." (Complaint at p. 1). Their claims are set forth in four counts. Count I asserts that TVA is not authorized to sell "surplus power" to limited liability

//

companies. Count II alleges that TVA's agreement with Trico Steel violates the preference and pricing requirements of the TVA act. Count III alleges that TVA's contract with Trico Steel violates conditions imposed on TVA's authority to issue and sell bonds. Count IV asserts that the actions of TVA's board regarding Trico Steel are unconstitutional because of the removal provisions relating to board members.

<u>PLAINTIFFS MAY NOT SEEK JUDICIAL REVIEW OF ELECTRICAL RATES SET BY THE TVA BOARD</u>

While the plaintiffs' complaint is somewhat vague in its allegations as to the damages suffered by the plaintiffs, any such damages rest on the proposition that the electrical rates charged Trico Steel are lower than plaintiffs believe they should be.[1] Therefore, the first issue to be addressed is this court's jurisdiction to review rates set for the sale of electrical power by the TVA. <u>Block v. Community Nutrition Institute</u>, 467 U.S. 340, 353, 81 L. Ed 2d 270, 280, 104 S. Ct. 2450 (1984), n. 4 ("Since congressional preclusion of judicial review is in effect jurisdictional, we need not address the standing issues decided by the Court of Appeals in this case.").

This court has previously held that the fixing of electrical rates by TVA is not subject to judicial review.

---

[1] The possible exception is count I, which alleges it is unlawful for TVA to sell "surplus power" to limited liability companies.

2

Twenty three years ago, in <u>Mobil Oil Corp. v. TVA</u>, 387 F. Supp. 498 (N.D. Ala. 1974), Judge Lynne examined the TVA act in detail and concluded that it does not provide for judicial review of electrical rates set by the TVA. 387 F. Supp. at 506-508.

> The fixing of rates which will balance and achieve all of these different objectives is a matter which Congress has entrusted to the judgment of the TVA Board, and which involves the clearest sort of commitment to agency discretion. Where agency action has thus been committed to agency discretion, it is not subject to judicial review.

<u>Mobil,</u> at 506 (footnote omitted). The following extended quotation from <u>Mobil</u> illustrates the unassailable rationale supporting this conclusion.

> The language included by Congress in the TVA Act concerning rates and contracts relating to rates— "such additional margin as the Board may consider desirable" (§ 15d(f)), "which, in the opinion of the Board ... will produce gross revenues in excess of the cost of production" (§ 14), and "such terms and conditions ... as in (the Board's) judgment may be necessary or desirable" (§ 10)— not only requires the exercise of agency discretion but precludes judicial review. Instead of providing for judicial review, Congress has retained oversight of TVA's rates and its contracts with respect thereto in its own hands. The Comptroller General of the United States is required to audit TVA's accounts annually and to make a report of each such audit to Congress. [16 U.S.C. § 831h(b); 31 U.S.C. §§ 850, 851.] The TVA Act requires that TVA give Congress and the President "a complete report as to (its) business" for each fiscal year. [16 U.S.C. § 831h(a).] Each such report must include "the rates at which (power is) sold, and to whom sold, and copies of all contracts for the sale of power." [16 U.S.C. § 831m.] It must also contain "a detailed statement of the operation of the provisions of (section 15d) during the year." [16 U.S.C. § 831n-4(c).] In addition, section 4(f) of the Act provides that "any member of said (TVA) board may be removed from office at any time by a concurrent resolution of the Senate and the House

3

of Representatives." As the Court of Appeals for this Circuit stated in <u>Alabama Power Co. v. Alabama Elec. Coop., Inc.</u>, 394 F.2d 672 (5th Cir.), cert. denied, 393 U.S. 1000, 89 S. Ct. 488, 21 L. Ed.2d 465 (1968), with reference to the Rural Electrification Act:

> The statute not only fails to provide for judicial review, but when construed in the light of its purpose and of legislative history, the statute retains oversight of the Administrator's actions in the hands of Congress itself and precludes judicial review (394 F.2d at 675).

<u>Mobil</u>, at 507 (internal footnotes inserted and bracketed). As Judge Lynne noted, this was not a new proposition:

> In <u>Tennessee Elec. Power Co. v. Tennessee Valley Authority</u>, 21 F. Supp. 947 (E.D. Tenn. 1938), aff'd, 306 U.S. 118, 59 S. Ct. 366, 83 L. Ed. 543 (1939), a three-judge court concluded:
>
>> The Tennessee Valley Authority Act authorizes the Board of Directors of the Authority to fix the rates at which the electric energy generated at the dams authorized by the Tennessee Valley Authority Act may be sold. The statute vests discretion in the board in fixing such rates, and the exercise of this discretion is not subject to judicial review. This provision of the statute is a valid exercise of the power of Congress to dispose of property of the United States.

Additional reasons for holding the TVA's rate setting process not subject to judicial review were set forth by the court in a footnote:

> Additionally, TVA in marketing electricity is disposing of property of the United States under policies laid down by Congress. <u>Ashwander v. Tennessee Valley Authority</u>, 297 U.S. 288, 336, 56 S. Ct. 466, 80 L. Ed. 688 (1936); <u>Tennessee Elec. Power Co. v. Tennessee Valley Authority</u>, 21 F. Supp. 947, 960-961 (E.D. Tenn. 1938), aff'd, 306 U.S. 118, 59 S. Ct. 366, 83 L. Ed. 543 (1939); <u>Tennessee Valley Authority v. Lenoir City</u>, 72 F. Supp. 457, 460-461 (E.D. Tenn. 1947). The

> conditions under which Federal property is to be
> disposed of is delegated by Article IV of the
> Constitution to Congress, not the courts.  "The power
> of Congress to dispose of any kind of property
> belonging to the United States 'is vested in Congress
> without limitation.' ... '... "And it is not for the
> courts to say how that trust shall be administered.
> That is for Congress to determine"'" (<u>Alabama v. Texas</u>,
> 347 U.S. 272, 273, 74 S. Ct. 481, 482, 98 L. Ed. 689
> (1954)).  <u>See also</u> <u>Ashwander v. Tennessee Valley
> Authority</u>, <u>supra</u>, 297 U.S. at 338, 56 S. Ct. 466;
> <u>United States v. California</u>, 332 U.S. 19, 67 S. Ct.
> 1658, 91 L. Ed. 1889 (1947); <u>United States v. San
> Francisco</u>, 310 U.S. 16, 60 S. Ct. 749, 84 L. Ed. 1050
> (1940); <u>Federal Power Comm'n v. Idaho Power Co.</u>, 344
> U.S. 17, 21, 73 S. Ct. 85, 97 L. Ed. 15 (1952).

<u>Mobil</u>, at 507, n. 22.

The conclusion of the court in <u>Mobil</u> was sound in 1974, and remains so today. The court knows of no reason that this conclusion should be reexamined. None of the cases cited by the plaintiffs call into question the core holding of <u>Mobil</u>, namely that individuals and industries may not challenge rates set by the TVA board in the district courts. The specter of the judiciary overseeing the rate setting function of the TVA Board is unthinkable. Courts are not the proper forum in which to weigh the myriad different objectives and factors that must be considered when electrical rates are set, either for individuals or for industry. This was recognized by the Sixth Circuit Court of Appeals in an unpublished decision, which held that TVA rates are not judicially reviewable.

> The federal court system, however, cannot assume the
> role of a (quasi) public service commission for TVA
> ratepayers. The broad grant of authority Congress has

afforded the TVA in the TVA Act precludes judicial review in this instance.

Matthews v. Town of Greenville, 1991 WL 71414, at **4, (May 2, 1991).

Therefore, the plaintiffs' claims based upon the assertion that Trico Steel was sold "surplus power" at a lower rate than the plaintiffs believe was appropriate may not be entertained by this court. This prohibition includes all claims contained in Counts II and III. Count II rests upon alleged violations of the pricing requirements of the TVA act. The claims contained in Count III are based upon alleged violations of the conditions imposed upon the issuance of bonds by TVA. Those conditions relate to the rates charged by TVA for electrical power and are, thus, not subject to review by this court. It should also be noted that plaintiffs may not seek judicial review of the rates they are charged by TVA for electrical power, whether or not they demonstrate a connection between those rates and the allegedly low rates charged Trico Steel.[2]

---

[2] Plaintiffs have moved for leave to amend their complaint by adding allegations related to a rate increase for residential electric customers. This represents an apparent attempt to demonstrate they have suffered an injury in fact due to TVA's actions with respect to Trico Steel. Because the preclusion of judicial review applies to rates for individual as well as industrial customers, the proposed amendment is irrelevant to the court's determination as to Counts II and III. The effect of the proposed amendment on the other counts will be addressed below.

## THE PLAINTIFFS DO NOT HAVE STANDING TO ASSERT ANY OF THE CLAIMS ALLEGED IN THEIR COMPLAINT

The Supreme Court recently summarized the minimum requirements for standing as follows:

> The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. ___, 117 S. Ct. ___, 137 L. Ed 2d 281, 295 (1997)(citations omitted). The focus of the standing question is on the party, and not on his claims.

> The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. ... [W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.

Flast v. Cohen, 392 U.S. 83, 99-100, 20 L. Ed. 2d 947, 961 (1968). As explained above, the issue of the rates set for the sale of electric power is not subject to judicial review, that is, it is not justiciable. This means that even parties possessing standing may not litigate that issue in the federal courts. However, as to the remainder of plaintiffs' claims, the issue of standing is dispositive.

7

The plaintiffs are without standing to assert any of their claims because any alleged injury is not "particularized" as to the them.[3]  "We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged <u>injury suffered is particularized as to him</u>."  <u>Raines v. Byrd</u>, 117 S. Ct. 2312, 2317 (June 26, 1997)(emphasis added).  The plaintiffs have alleged no injury not also shared by all TVA residential customers and bondholders.  The following quotation from <u>Frothingham v. Mellon</u>, 262 U.S. 447, 67 L. Ed. 1078, 43 S. Ct. 597 (1923), illustrates the rationale behind the "particularity" requirement:

> His interest in the moneys of the treasury--partly realized from taxation and partly from other sources--<u>is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain</u>, that no basis is afforded for an appeal to the preventive powers of a court of equity.
>
> The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern.  <u>If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same</u>, not only in respect of the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned.

---

   [3]  Plaintiffs' proposed amendment to their complaint does not change this fact.

8

67 L. Ed. at 1085 (emphasis added). If rate-payer or bondholder is substituted for taxpayer in the above, the impropriety of allowing the plaintiffs to challenge the sale of power to Trico Steel is apparent. If every ratepayer were allowed to challenge each sale of surplus power to an industrial customer, chaos would be the result. The conclusion of the Frothingham Court is equally applicable to this case. "The bare suggestion of such a result, [in this case allowing each TVA ratepayer to challenge each contract for the sale of surplus power] with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained." 67 L. Ed. at 1085.

This prohibition against affording standing based upon a nonparticularized injury, has been more recently noted in Warth v. Seldon, 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975).

> [T]he Court has held that when the asserted harm is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.

422 U.S. at 499, 45 L. Ed. 2d at 355. In the present case, all TVA residential electric customers would share the same injury which the plaintiffs allege. This group surely numbers in the millions. Such "generalized grievances" are better settled in the political arena. The judicial branch is not the proper arm of government to redress such injuries.

Because the plaintiffs have failed to allege an injury that is both personal and particularized as to them, they do not have standing to maintain the present action. Their assertions that their employers will be damaged by the sale of surplus power to Trico Steel does not change this conclusion. See <u>Valley Forge College v. Americans United</u>, 454 U.S. 464, 474, 70 L. Ed. 2d 700, 711, 102 S. Ct. 752 (1982)("[Plaintiff] cannot rest his claim to relief on the legal rights or interests of third parties.") (quoting <u>Warth v. Seldin</u>, 422 U.S. at 499, 45 L. Ed. 2d at 355).

### ADDITIONAL REASONS THE PLAINTIFFS DO NOT HAVE STANDING TO ASSERT THE CLAIMS CONTAINED IN COUNT I OF THEIR COMPLAINT

Count I alleges that TVA is not authorized to sell "surplus power" to a limited liability company. The authorization for the sale of "surplus power" is found at 16 U.S.C. § 831i which provides in pertinent part as follows:

> The Board is empowered and authorized to sell the surplus power not used in its operations, and for operation of locks and other works generated by it, to States, counties, municipalities, corporations, partnerships, or individuals, according to the policies hereinafter set forth;

The plaintiffs argue that because limited liability companies are not mentioned specifically, TVA may not sell power to such entities. While the plaintiffs devote a great deal of argument to their contention that the act does not authorize the sale of surplus power to limited liability companies, they must first

10

establish that they have standing to challenge such a sale. Even if it is assumed <u>arguendo</u> that the act prohibits the sale of surplus power to limited liability companies, this court cannot reach that issue if the plaintiffs are without standing.[4]

The plaintiffs have totally failed to suggest how the sale of surplus power to a limited liability company has injured them in fact. They do not suggest that Trico Steel has defaulted on any payments currently due. Although they suggest that the limitation of personal liability inherent in the limited liability company form of doing business suggests Congress did

---

[4] The court notes, however, that plaintiffs arguments are unpersuasive on that issue. Limited liability companies are clearly a form of partnership in the broadest sense. The act does not specifically set forth all the various types of partnerships, such as limited partnerships. The plaintiffs do not assert that sales to limited partnerships are prohibited.

Additionally, the court notes the wording following the passage from the act quoted above:

> ... and to carry out said authority, the Board is authorized to enter into contracts for such sale for a term not exceeding twenty years, and in the sale of such current by the Board it shall give preference to States, counties, municipalities, and <u>cooperative organizations of citizens or farmers</u>, not organized or doing business for profit, but primarily for the purpose of supplying electricity to its own citizens or members ....

16 U.S.C. § 831i (emphasis added). "Cooperative organizations of citizens" are not specifically mentioned in the list of entities to which TVA is authorized to sell power. Although it might be argued that only "cooperative organizations of citizens" that are either partnerships or corporations were intended by that phrase, it seems more likely that the use of such broad language is evidence of congressional intent that the power to sell surplus power be broadly construed.

not intend to authorize the sale of power to such entities, they do not suggest that the owners of Trico Steel have or are about to avail themselves of that protection. It cannot be questioned that the owners of corporations possess the same limit of personal liability as limited liability companies. The plaintiffs have not demonstrated that there is any greater likelihood that limited liability companies, as opposed to corporations, will avail themselves of that protection. Just as with corporations, the creditworthiness of any particular limited liability company will depend upon factors unique to that entity. For these reasons it is clear the plaintiffs have alleged no current injury as a result of the sale of power to a limited liability company. Therefore, the plaintiffs have not alleged an "'injury in fact' ... 'fairly traceable' to the actions of the defendant" and the plaintiffs are without standing to raise the issue of the sale of surplus power to Trico Steel, a limited liability company. The court need not address whether the plaintiffs would have standing should Trico Steel default on payments due to TVA; such hypothetical questions must be left to the future.

## ADDITIONAL REASONS THE PLAINTIFFS DO NOT HAVE STANDING TO ASSERT THEIR CLAIMS CONTAINED IN COUNT IV OF THEIR COMPLAINT

Count IV of the complaint alleges that the actions of the TVA Board regarding Trico Steel are unconstitutional because the provisions relating to the removal of its members violate the separation of powers doctrine.[5] In essence the plaintiffs seek to have this court declare the removal provisions of the TVA Act found in 16 U.S.C. § 831c unconstitutional. Furthermore, they assert the removal provisions are not severable from the other provisions of section 831c and, therefore, suggest that the entire section is unconstitutional.[6] "Here, however, Congress's expressed intent was that, if the removal provisions were severed, all of 16 U.S.C. § 831c would be excised along with it, i.e., all the corporate powers of the TVA, including the power to purchase or lease real property, the powers of eminent domain,

---

[5] Although this court need not reach the merits of plaintiffs' separation of powers argument, it notes in passing the likelihood such argument would prevail if brought by a plaintiff with standing to raise the issue. Modern notions of the Separation of Powers Doctrine clearly prohibit the retention by Congress of a power to remove an individual appointed by the president who is charged with the implementation of law—such activity being viewed as an executive branch function. See INS v. Chadha, 462 U.S. 919, 77 L. Ed. 2d 317, 103 S. Ct. 2764 (1983); Bowsher v. Synar, 478 U.S. 714, 92 L. Ed. 2d 853, 106 S. Ct. 3181 (1986); MWAA v. CAAN, 501 U.S. 252, 115 L. Ed. 2d 236, 111 S. Ct. 2998 (1991).

[6] This position, as opposed to the mere severance of the removal provision, is necessary in order for plaintiffs to assert that their alleged injuries would be remedied should they prevail on the merits.

the power to construct dams and utility lines, and many other powers." (Plaintiffs' brief in opposition, at p. 27). Therefore, the plaintiffs argue that TVA's contract with Trico Steel should be invalidated.

In addition to the general standing considerations discussed above, an additional ground for holding the plaintiffs do not have standing to challenge the constitutionality of the TVA board exists. In addition to the requirement of injury in fact, it is also necessary that "relief from the injury must be 'likely' to follow from a favorable decision." Allen v. Wright, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 570, 104 S. Ct. 3315 (1984). In the present case it is highly unlikely that a favorable decision on plaintiffs' separation of powers claim would result in any relief from the alleged injury—higher electric rates due to the sale to Trico Steel. Should the congressional removal provision be found to violate the separation of powers doctrine, the most likely remedy would be its severance from the TVA Act. Thus, the actions of the TVA Board would be undisturbed, leaving the contract with Trico Steel in full effect.

Should plaintiffs prevail on their argument that the removal provision is not severable, an unlikely result, and should this court determine that 16 U.S.C. § 831c is void in its entirety, the prior actions of the TVA Board would nonetheless be valid as the acts of the de facto board of a de facto corporation. Plaintiffs cannot seriously suggest that this or

14

any other court would declare all actions of the TVA Board since its inception in 1933 to be invalid.

Therefore, it is unlikely that the plaintiffs' alleged injury would be redressed by a favorable ruling on their separation of powers claims. Thus the plaintiffs do not have standing to assert those claims.

## CONCLUSION

As a matter of law the plaintiffs may not seek judicial review of the rate setting function of the TVA Board. They do not possess standing to assert any of the other claims contained in their complaint. The proposed amendment to their complaint would not change the above result and will be denied as futile. For these reasons defendant's motion to dismiss is due to be granted.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED this 24th day of September 1997.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.